## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

DERRICK LEE BASSETT,

     Petitioner,                            Case No. 1:18-CV-10831

v.                                     Honorable Thomas L. Ludington

PAT WARREN,

     Respondent,

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL _IN FORMA PAUPERIS_

Petitioner, Derrick Lee Bassett, presently incarcerated at the Macomb Regional Facility in New Haven, Michigan, has filed a *pro se* application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was convicted by a judge in the Wayne County Circuit Court of carjacking, Mich. Comp Laws § 750.529(a), and was sentenced to nine to twenty years in prison. Petitioner contends that there was insufficient evidence to convict him and that he was denied the effective assistance of counsel. The respondent filed an answer to the petition, asserting that the claims lack merit. Petitioner's claims are without merit and will be denied.

## I.

Petitioner was tried and convicted with his co-defendant, Aaron Barrett. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

> The victim, Kevin Carter, was acquainted with defendants, who are cousins, through his friendship with their uncles. According to Carter, he met up with defendants to give them a ride at their request. When he arrived, he saw that Barrett had an AK–47 assault rifle inside one leg of his pants. When Carter refused to let

Barrett bring the weapon into the car, Barrett pulled it out, pointed it at Carter, and removed the car keys from the ignition. During the incident, Bassett urged Barrett to "Give him the K" and added, "It can go down right here." Carter ran away, leaving his cell phone behind inside the car, and defendants took the car. Both the phone and the vehicle were later recovered.

Contrary to Carter's testimony, Bassett testified that Carter loaned him the car for three hours in exchange for cocaine. Bassett explained that when he took the car, he found Carter's phone inside. Bassett used the car and then abandoned it after learning that it had been reported as stolen. Barrett did not testify at trial.

The trial court found defendants guilty of the offenses previously noted. Although the trial court found that Carter knew defendants "better than he let on," it also concluded that defendants robbed Carter at gunpoint and, even though they did not intend to permanently deprive Carter of the car, they intended to take it for as long as they needed it.

*People v. Barrett*, No. 328775, 2017 WL 188030, at * 1 (Mich. Ct. App. Jan. 17, 2017).

Petitioner's conviction was affirmed on appeal. *Id.*, *lv. den. sub nom. People v. Bassett*, 500 Mich. 1060, 898 N.W.2d 219 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. The evidence presented against Defendant was insufficient to establish all the elements of the crime beyond a reasonable doubt.

II. Defense counsel was ineffective by failing to notify defendant's witnesses of the trial and failing to obtain cellphone records and present them to the court.

III. Defense counsel provided ineffective assistance by failing to impeach the complaining witness at trial with a statement given to police.

## II.

28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

    (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

### III.

### A.

Petitioner contends that there was insufficient evidence to convict him of carjacking because the prosecutor failed to present evidence that Petitioner and his co-defendant intended to permanently deprive the victim of his vehicle.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after

viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted) (emphasis in the original).[1]

Furthermore, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F. 2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F. 3d 780, 788 (6th Cir. 2003); *See also Butzman v. U.S.,* 205 F. 2d 343, 349 (6th Cir. 1953) (in a bench trial, credibility of witnesses is a question for trial judge).

Under Michigan law, the elements of carjacking are: (1) the defendant took a motor vehicle from another person; (2) the defendant did so in the presence of that person, a passenger, or any other person in lawful possession of the motor vehicle; and (3) the defendant did so either by force or violence, by threat of force or violence, or by putting the other person in fear. *People v. Davenport*, 230 Mich. App. 577, 579; 583 N. W. 2d 919 (1998).

Michigan law does not require that a thief have an intent to permanently deprive the owner of the property. Instead, the intent required is a "lack of purpose to return the property with reasonable promptitude and in substantially unimpaired condition." *People v. Jones*, 98 Mich. App 421, 425-26; 296 N.W. 2d 268 (1980) (citing CJI Commentary, p. 23-11). The Michigan Court of Appeals in *Jones* concluded that the term "'Permanently deprive' means doing any of the following:

> (i) Withholding property or causing property to be withheld from a person permanently or for such an extended period or under such circumstances, so that

---

[1] The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

a significant portion of the property's economic value or of the use and benefit of the property is lost to the person.

(ii) Disposing of the property in a manner which makes it unlikely that the owner will recover the property.

(iii) Retaining the property with the intent to restore the property to the owner only if the owner purchases or leases it back or pays a reward or other compensation for the property's return.

(iv) Selling, giving, pledging, or otherwise transferring any interest in the property.

(v) Subjecting the property to the claim of a person other than the owner."

*Id.* at 426.

The Michigan Court of Appeals concluded that the evidence supported a finding that Petitioner and his co-defendant intended to permanently deprive the victim of his motor vehicle so as to support the carjacking conviction:

> The evidence in this case, viewed in a light most favorable to the prosecution, showed that Barrett, aided and abetted by Bassett, took Carter's car at gunpoint when he refused to give them a ride to the store. Most significantly, defendants' acts of taking the car after threatening Carter at gunpoint, and grabbing the keys out of the ignition before Carter ran from the scene, support a finding of an intent to act inconsistently with Carter's right to possess the property and an intent to retain the "property without the purpose to return it within a reasonable time." Likewise, the evidence supports the trial court's finding that defendants may not have intended to keep the car permanently, but they did intend to keep it for an indefinite period of time, i.e., as long as they needed it. Although it is unclear how long defendants kept the car, Carter's and Bassett's testimony both indicate that defendants abandoned it only because they found out that the vehicle had been reported stolen, and the car was not recovered until four days after it was taken.

> Additionally, Carter's phone was in the car when defendants drove away, and defendants retained the phone for a short period of time before giving it to a third person, who ultimately returned it to Carter. Neither defendant returned the phone to Carter himself, and there is no evidence that one or both of them gave the phone to the third person specifically intending that the third person would return it to Carter. [2]

*People v. Barrett*, 2017 WL 188030, at * 3 (internal footnotes omitted).

---

[2] Notably, defendant Bassett made no reference to returning the phone when he testified at trial, only noting during his testimony that Carter's phone was in the car after Carter let him borrow the vehicle by himself. (Footnote original).

The Michigan Court of Appeals' determination that there was sufficient evidence to support Petitioner's carjacking conviction was reasonable. First, there is no indication that either Petitioner or his co-defendant ever intended to return the car to the victim with "reasonable promptitude and in substantially unimpaired condition." *People v. Jones*, 98 Mich. App at 425-26. In addition, Petitioner's act of abandoning the vehicle created a considerable risk of permanent loss to the victim, so as to allow a finder of fact to infer that the defendants intended to permanently deprive him of his car. *See People v. McIntosh,* 103 Mich. App. 11, 19-20; 302 N.W. 2d 321 (1981)(citing Perkins, Criminal Law (2d ed.), s. 1, p. 267). The Michigan Court of Appeals' conclusion that there was sufficient evidence of larcenous intent to support Petitioner's carjacking conviction was not an unreasonable application of clearly established federal law, thus Petitioner is not entitled to habeas relief. *See Jacobs v. Sherman*, 301 F. App'x. 463, 468-69 (6th Cir. 2008).

**B.**

Petitioner alleges ineffective assistance of trial counsel in his second and third claims.

A defendant must satisfy a two-prong test in order to show that he was denied the effective assistance of counsel. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. Thus, a defendant must overcome the presumption that, under the circumstances, the challenged action or inaction might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id*. To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The Supreme

Court's holding in *Strickland* places the burden on the defendant raising the claim of ineffective assistance of counsel, not the state, to show a reasonable probability that the result of the proceeding would have been different but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

The Court is also aware that on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas Petitioner. *Id.* Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Harrington v. Richter*, 562 U.S. at 105.

## 1.

Petitioner initially contends that trial counsel was ineffective for failing to call witnesses or present cellphone text messages which Petitioner alleges were exchanged between himself and

the victim after the car was taken.  Petitioner argues that this evidence would have corroborated

Petitioner's claim that the victim willingly loaned Petitioner his car in exchange for drugs.

The Michigan Court of Appeals rejected Petitioner's claim:

> There is nothing in the record to support Bassett's claim that anyone was present when the loan agreement was made or later discussed over the phone.  To the contrary, Bassett's testimony indicated that he and Carter were alone using drugs in the kitchen because other people present in the house did not use cocaine.  Nor is there anything in the record to indicate that Bassett and Carter exchanged text messages.  Both men testified only to making and receiving speaking calls.  The only text message identified was one from Barrett warning Carter not to "tell on" Bassett.
>
> Bassett has attempted to substantiate his ineffective assistance claim by proffering on appeal an "affidavit" attesting to the existence of witnesses and text messages.  However, the "affidavit" submitted with Bassett's brief is not signed by him or notarized, and "a document that is not notarized is not a 'valid affidavit.'"  Further, it would be improper for us to consider the "affidavit" because it is not part of the lower court record and, therefore, constitutes an impermissible expansion of the record on appeal.  And, even if we were to consider the affidavit, it does not identify the individuals who allegedly witnessed Bassett's agreement with Carter or what text messages were allegedly exchanged between Bassett and Carter, and Bassett has not submitted affidavits from any other witnesses indicating the testimony that they could have provided.  Consequently, there is no factual basis for concluding that counsel was ineffective for failing to call witnesses or present evidence of text messages.

*People v. Barrett*, 2017 WL 188030, at * 5 (internal citations omitted).

When defense counsel focuses on certain issues to the exclusion of others, there is a strong

presumption that counsel did so for tactical reasons. This presumption has particular force where

an ineffective assistance of counsel claim is asserted by a federal habeas Petitioner based solely

on the trial record, where a reviewing court "may have no way of knowing whether a seemingly

unusual or misguided action by counsel had a sound strategic motive." *See Yarborough v. Gentry*,

540 U.S. 1, 5-6 (2003)(quoting *Massaro v. United States*, 538 U.S. 500, 505 (2003)). Petitioner

presented no evidence to the Michigan courts to rebut the presumption that counsel's decision to

forego presenting this evidence was tactical.

Petitioner is also not entitled to relief on his claim because he failed to provide to the Michigan courts or to this Court any affidavits from his proposed witnesses concerning their testimony and willingness to testify on Petitioner's behalf. [3] Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, cannot support a claim for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). Petitioner failed to present any evidence to the state courts in support of his ineffective assistance of counsel claim and is thus not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F. 3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)). Petitioner failed to identify these witnesses or attach any offer of proof or any affidavits sworn by the proposed witnesses. Petitioner has offered no evidence beyond his own assertions as to whether the witnesses would have testified and what the content of these witnesses' testimony would have been. Without such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial. *See Clark v. Waller,* 490 F. 3d 551, 557 (6th Cir. 2007).

Moreover, this Court may not entertain any affidavits from such witnesses. The United States Supreme Court has held that habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Therefore, *Cullen* would preclude the Court from considering new evidence that Petitioner would want to present in support of his ineffective assistance of trial counsel claim under 28 U.S.C. §2254(d). *Cf. Campbell v. Bradshaw*, 674 F.3d

---

[3] The Michigan Court of Appeals also rejected Petitioner's claim because Petitioner's own affidavit was not notarized. Although the affidavit attached to Petitioner's initial brief on appeal and his motion to remand was not notarized (ECF 9-12, Pg ID 334-35, 356-57), somewhat later in the Rule 5 materials there is a notarized affidavit signed by Petitioner. (ECF 9-12, Pg ID 384-86). Regardless of whether Petitioner's own affidavit was sworn or unsworn, it is insufficient to prove his ineffective assistance of counsel claim because he neither mentions the witnesses by name nor does his self-serving affidavit prove that these witnesses would have testified favorably on his behalf.

578, 590, n.3 (6ᵗʰ Cir. 2012)(declining to consider testimony taken in federal evidentiary hearing because it was not part of the state court record).  Petitioner presented no evidence to rebut the presumption that counsel's decision to forego calling these witnesses or present any additional evidence on his behalf was strategic or that the outcome of the trial would have been different had this evidence been presented.

In any event, testimony from any witnesses that they overheard the victim agree to exchange his car with Petitioner for drugs would have contradicted Petitioner's own testimony that he and the victim had been alone when they were using drugs and the victim offered him his car. (Tr. 7/21/15, pp. 79-80).  Similarly, Petitioner never testified to exchanging text messages with the victim.  Accordingly, any testimony concerning exchanged text messages would also have been inconsistent with Petitioner's testimony.  Additionally, such testimony would have been inconsistent with both the victim's testimony that his cell phone remained in the vehicle when it was stolen (Tr. 7/21/15, pp. 25-26) and Petitioner's own testimony that the victim's cell phone remained in his vehicle when Petitioner "rented" or borrowed it. (*Id.*, p. 80).  Counsel was not ineffective for failing to call witnesses or present evidence which would have contradicted Petitioner's testimony. *See Pillette v. Berghuis,* 408 F. App'x. 873, 887 (6ᵗʰ Cir. 2010)(counsel not ineffective in failing to call witness who said two things that would have contradicted defendant's testimony).

**2.**

Petitioner next claims that trial counsel was ineffective for failing to impeach the victim with a police report or preliminary complaint report (PCR) to challenge the victim's testimony that Petitioner participated in the robbery.   Petitioner notes that there is no indication in the PCR that

the victim claimed that Petitioner spoke to him during the robbery, thus suggesting that the co-defendant acted alone.

The Michigan Court of Appeals rejected Petitioner's claim:

> Bassett's impeachment claim fails for the same reasons. The record shows that a police officer's "PCR" was mentioned at trial, but it was not introduced into evidence and is not part of the lower court record. But, even if we consider the police report appended to Bassett's Standard 4 brief, it indicates that Carter reported portions of a conversation between himself and "Baby Cuz" (Barrett), but did not mention that "Mooney" (Bassett) participated in the conversation. However, the report was prepared by someone other than Carter. Accordingly, it is impossible to know whether the omission occurred because Carter failed to mention Mooney's statements or because, even though he mentioned them, the officer did not include that information in the report. In any event, the record plainly shows that defense counsel extensively cross–examined Carter and used the PCR to impeach his testimony. Given defense counsel's impeachment of Carter through other means, the fact that he did not use the report to impeach every inconsistent statement made by Carter at trial did not render defense counsel ineffective.

*People v. Barrett*, 2017 WL 188030, at * 5 (internal citations omitted).

In the present case, the victim was impeached on cross-examination with the fact that he had been drinking alcohol. (Tr. 7/21/15, pp. 37-38). Defense counsel also elicited testimony from Officer Ryan Jones that the victim had told him at the time of the offense that four African-American males approached him and took his vehicle, which was inconsistent with the victim's trial testimony that only Petitioner and the co-defendant took his car. (*Id.*, pp. 63-64).

Petitioner is not entitled to relief on his claim for several reasons. First, counsel was not deficient for failing to cross-examine the victim about the police report because the victim did not actually prepare the report and was not responsible for its contents. *See Dixon v. Warden, S. Ohio Corr. Facility*, 940 F. Supp. 2d 614, 633 (S.D. Ohio 2013). Omission of any reference to statements made by Petitioner in the PCR, which the victim did not prepare or review, does not present strong evidence of impeachment to support Petitioner's ineffective assistance of counsel claim. *See Peterson v. Smith*, 510 F. App'x 356, 361-62 (6th Cir. 2013).

Second, the mere fact that the PCR indicates that the co-defendant was the only person who spoke does not necessarily exclude Petitioner from having participated in the crime. Petitioner failed to show that the PCR contained information that would exonerate him of this crime. Thus, any alleged failure by counsel to use this police report did not prejudice Petitioner. *See Pillette v. Berghuis,* 408 F. App'x. at 889-90.

Third, Petitioner was not prejudiced by counsel's failure to impeach the victim with the PCR because it was cumulative of other evidence and witnesses presented at trial to impeach the victim's credibility *Wong,* 558 U.S. at 22-23. In this case, the judge had significant evidence presented to her to challenge the victim's credibility concerning the night in question. Because the judge was "well acquainted" with evidence that would have supported Petitioner's claim that the victim fabricated these charges, additional evidence in support of Petitioner's defense "would have offered an insignificant benefit, if any at all." *Id.*, at 23.

## IV.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R.App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A Petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell,* 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the

underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

Petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed *in forma pauperis* on appeal, as any appeal would be frivolous. See Fed.R.App. P. 24(a).

**V.**

Accordingly, it is **ORDERED** that the petition for writ of habeas corpus [Dkt. # 1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED.**

It is further **ORDERED** that permission to proceed *in forma pauperis* on appeal is **DENIED.**

Dated: April 24, 2019                                    s/Thomas L. Ludington
                                                          THOMAS L. LUDINGTON
                                                          United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and to **Derrick Lee Bassett** #811456, MACOMB CORRECTIONAL FACILITY, 34625 26 MILE ROAD, NEW HAVEN, MI 48048 by first class U.S. mail on April 24, 2019.

                                s/Kelly Winslow
                                KELLY WINSLOW, Case Manager